## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| Lawrence Scott,<br><br>      Plaintiff,<br><br>v.<br><br>City of Chicago, *an Illinois Municipal Corporation*, and, Officer Robert Vahl #7350, Officer Steve Barsch #18287, Officer William Gentile #1399, And Other Unknown Co-Conspirators, Does 1-99.<br><br>      Defendants. | Case No.: 1:15-cv-07172<br><br>JURY TRIAL DEMANDED |

## FIFTH AMENDED COMPLAINT

The Plaintiff, Lawrence Scott, by his attorneys at the Law Offices of Haytham Faraj, complains against the Defendants, City of Chicago, an Illinois Municipal Corporation, Officer Robert Vahl #7350, Officer Steve Barsch #18287, Officer William Gentile #1399, and other unknown co-conspirators, Does 1-99, and upon information and belief, states as follows:

### INTRODUCTION

1.     This action is brought seeking damages as redress for the violation of Plaintiff's rights enumerated under the Fourth and

1

Fourteenth Amendments to the Constitution of the United States of America, and for personal injuries sustained by Plaintiff.

**2.**     The damages resulted from the Defendants' unlawful and unauthorized detention, arrest, and criminal charging of the Plaintiff, the unlawful use of excessive force and/or brutality against the Plaintiff causing severe bodily and personal injuries, the unlawful failure to intervene regarding the aforementioned, and the intentional withholding and/or destruction of exculpatory evidence resulting in a deprivation of the Plaintiff's right to a fair trial, all of which have caused the Plaintiff significant and severe damages, including personal and pecuniary injuries.

**3.**     The City of Chicago is liable for the damages suffered by Plaintiff because the City of Chicago was aware that the police officer Defendants had a history of abusing citizens, but failed to institute proper training or discipline to prevent further abuse.

## JURISDICTION AND VENUE

**4.**     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331 and §1343(a)(3), as the Federal Claims are brought under 42 U.S.C. §§1983 and 1988.

**5.**     Venue is proper, pursuant to 28 U.S.C. §1391(b), as the parties reside in this district and the events giving rise to the claims occurred in this district.

### FACTS COMMON TO ALL COUNTS AND PARTIES

**6.**      Mr. Scott is a young black man. He was twenty-one on the night he was attacked by a police officer. He lives in Englewood, a tight-knit African American community on the south-side of Chicago. Mr. Scott is a high school graduate, and earns money to support himself by selling concessions at Soldier Field when the Bears play.

**7.**      On the early evening of April 29, 2014, Mr. Scott was standing in front of his house, talking quietly with a group of friends. As the group was conversing, a black sedan pulled onto Mr. Scott's street.

**8.**      Suddenly, the black sedan drove directly towards Mr. Scott and his friends.

**9.**      The vehicle was moving at a slow rate of speed, and Mr. Scott was afraid he was going to be shot.

**10.**      Mr. Scott turned around and ran. At some point, Mr. Scott realized that the vehicle was an unmarked police car, but Mr. Scott had no idea why the police would stop him or his friends, and no order to stop was given.

**11.**      Mr. Scott ran through his backyard to escape. He jumped over the fence in his backyard and continued running. While running, he took a small bag of marijuana from his pocket and threw it.

**12.**      When Mr. Scott entered the alley behind his neighbor's house, he was confronted by a plain clothed officer with a large rifle. The rifle was pointed directly at Mr. Scott's head, and the officer said, "Freeze!"

3

**13.**     Mr. Scott stopped dead in his tracks; he was terrified he would be shot. The two men were alone in the alley and Mr. Scott was intimidated.

**14.**     The officer said, "Don't move!"

**15.**     Mr. Scott said, "I'm froze! I'm froze! I ain't gonna move! I ain't gonna move!"

**16.**     The officer lowered his weapon, approached Mr. Scott, and began to pat him down. The two were facing each other, and Mr. Scott's hands were in the air. The officer patted down the front side of Mr. Scott without finding anything.

**17.**     Mr. Scott continued to stand in place with his hands up. The officer moved behind Mr. Scott, and started to pat down his back. The officer finished the pat down without finding anything.

**18.**     Mr. Scott was now facing the officer, hands still in the air. Mr. Scott was still frightened from having the huge rifle pointed at his head. His feet were firmly planted on the ground, and he was afraid to even look the officer in his eyes.

**19.**     Mr. Scott was looking towards his right, at his friend's house, then suddenly, out of his peripheral vision, Mr. Scott saw something swing towards his head. He immediately went unconscious.

**20.**     When Mr. Scott finally came to, he was handcuffed behind his back, and lying face down on the alley floor.

**21.**     Mr. Scott was groggy, and wasn't sure what had happened to him. The officer was standing over him. Mr. Scott asked the officer "What did you hit me with? That wasn't your hand. You hit me with that big ass gun."

**22.**     The officer then dropped his entire weight down onto Mr. Scott's back, grinding his knee into Mr. Scott's back. The officer said "Shut your mouth." Then he placed his hand on the back of Mr. Scott's head, and bounced Mr. Scott's forehead off the pavement. Mr. Scott shut his mouth.

**23.**     On information and belief, the officer who attacked Mr. Scott in the alley was Defendant Robert Vahl #7350.

**24.**     Mr. Scott lay bleeding in the alley when Steve Barsch #18287 arrived.

**25.**     Upon information and belief Officer Barsch and another officer lifted Mr. Scott off the ground, and placed him against his police car.

**26.**     On information and belief, Officer Barsch was inside the black sedan that had earlier approached the plaintiff.

**27.**     Mr. Scott told Officer Barsh that Officer Vahl had attacked him with a weapon.

**28.**     Officer Barsh laughed at him and said, "No he didn't."

**29.**     Officer Barsh placed Mr. Scott in the back of the police car.

30. Officer Barsh could see the blood pouring down Plaintiff's head and neck at this time, but made no effort to investigate the cause of the injury, or to document Officer Vahl's abusive conduct.

31. Several officers, including Officer Barsch spent the next five or ten minutes searching the bushes near the yard Mr. Scott ran through.

32. They returned with a small bag that the police report purports contained two and a half grams of marijuana.

33. After that, they brought Mr. Scott to the police station. His head was still bleeding.

34. On information and belief, once at the police station, Officer W. Gentile #1399 approved the arrest of Mr. Scott.

35. Officer Gentile knew Mr. Scott's head was bleeding profusely, but he made no effort to investigate the source of the injury, and failed to document the abusive conduct of the officers under his supervision.

36. The wound in Plaintiff's head continued to pour blood, so finally, approximately three (3) hours after arresting Mr. Scott, Officer Barsch and Officer Vahl brought Mr. Scott to the hospital for treatment.

37. While at the hospital, Mr. Scott told his nurse he had been assaulted by a police officer.

38. Officer Barsch and Officer Vahl used non-verbal intimidation techniques to stop Mr. Scott from repeating his story to other hospital workers.

**39.** Mr. Scott required several staples in his head, and was treated for concussion and traumatic brain injury.

**40.** Mr. Scott was then brought back to the police station and charged with resisting arrest and aggravated assault on a police officer.

**41.** The Chicago Police Department has a well-documented custom and practice of charging innocent men with resisting arrest and assault on a police officer to conceal cases of police brutality.[1]

**42.** On information and belief, Officer Barsch and Officer Gentile conspired to conceal the brutality committed by Officer Vahl against the Plaintiff.

## THE ENTITY PARTY – MUNICIPAL LIABILITY

**43.** On and for some time before and after April 29, 2014, the Defendant, City of Chicago, was a municipal corporation organized and chartered under the laws of the State of Illinois, obligated to indemnify employees for judgments resulting from conduct occurring within the scope of employment.

**44.** On and for some time before and after April 29, 2014, the City of Chicago maintained customs and policies which were deliberately indifferent to the rights of the Plaintiff and caused a deprivation of Plaintiff's rights.

---

[1] *See* Exhibit 1: Sarah Hughes Newman, *Proving Probable Cause: Allocating the Burden of Proof in False Arrest Claims Under S 1983*, 73 U. Chi. L. Rev. 347 (2006), p. 371.

**45.** ***The City of Chicago was on Notice that the Defendant Officers Were Dangerous and Needed Training***

**46.** The City of Chicago had a duty to ensure that the Defendant Officers were properly trained, supervised, and disciplined.

**47.** Proper training, supervision, and discipline could have prevented the damages Mr. Scott suffered.

**48.** The City of Chicago breached its duty when it allowed Officer Vahl, and the other Defendant Officers to remain on street duty, despite ample notice that the officers were violent, and prone to violating the law in deprivation of the civil liberties of individual citizens.

**49.** The City of Chicago was on notice of the violent nature of the officers because numerous complaints have been filed against them by citizens of Chicago.[2]

**50.** Officer Vahl, the officer who split Mr. Scott's head open with his weapon, has received at least 36 complaints of misconduct while on duty.

**51.** Most of the complaints against Officer Vahl allege conduct similar to the conduct alleged herein, i.e. illegal use of force, false arrest, etc.

**52.** Officer Barsch, and Officer Gentile have also been the subject of numerous complaints received by the City of Chicago.

---

[2] See Exhibit 2: Reports of Defendant Police Officers' Misconduct

53.     In addition to the numerous complaints that have been filed against the Defendant officers, there is at least one civil action pending in Federal Court that names Officers Vahl, Barsch, and Gentile as co-defendants, alleging similar conduct as alleged herein.[3]

54.     The Illinois Appellate Court recently commented on officer Vahl's shortcomings concerning proper arrest procedures when it said, "we find that the State failed to establish that Vahl had a reasonable suspicion sufficient to justify the intrusion on Sims's right to go about his business free from intrusion by the police."[4]

55.     Despite the City of Chicago's notice that the Defendant officers were in need of training, supervision, and discipline, the City of Chicago took no action to protect citizens from these dangerous officers.

56.     This lack of action by the City of Chicago was typical during the time period relevant to this complaint.

57.     At the time, the Chicago Police Department was operating under a "code of silence" to prevent police officers from being held accountable for the crimes they commit in the line of duty.[5]

_____

[3] See Exhibit 3: Hale v. Chicago *et al.* Case No. 13-cv-7532

[4] See Exhibit 4: People v. Sims, 2014 IL App (1st) 121306 ¶ 17

[5] See Exhibit 5: UIC Political Science Department 2013 Anti-Corruption Report – "Crime, Corruption, and Cover-ups in the Chicago Police Department."

58.     Members of the Independent Police Review Authority (IPRA) were under pressure to cover-up police brutality or risk losing their jobs.[6]

59.     The City of Chicago also maintained unconstitutional stop-and-frisk policies that caused the police to initiate contact with Mr. Scott in violation of his constitutional rights.

### 60.     *Unconstitutional Policies Caused the Initial Stop*

61.     On information and belief, the Defendants' initial stop of the Plaintiff was based on an unconstitutional stop-and-frisk policy which has since been abandoned by the City of Chicago.

62.     At the time of Plaintiff's stop, Defendant City of Chicago had an unconstitutional policy to target black men for illegal stop-and-frisk tactics and other forms of intimidation.[7]

63.     The ACLU of Illinois conducted an extensive review of City of Chicago policies related to stop-and-frisk and concluded that "Chicago has failed to train, supervise and monitor law enforcement in minority communities for decades, resulting in a failure to ensure that officers' use of stop and frisk is lawful. This report contains troubling signs that

---

[6] See Exhibit 6: Chicago Sun-Times Article on IPRA Investigator Fired for Uncovering Police Misconduct.

[7] See Exhibit 7: ACLU of Illinois Report "Stop and Frisk in Chicago."

the Chicago Police Department has a current practice of unlawfully using stop and frisk."[8]

64.     The policies criticized by the ACLU were in place at the time Mr. Scott was attacked.

65.     The City of Chicago entered into an agreement with the ACLU to introduce new policies and new training for police officers to prevent abusive and unconstitutional stop-and-frisk tactics.[9]

66.     Some of the unconstitutional stop-and-frisk policies in place when Mr. Scott was attacked have since been over-hauled.

67.     Some Chicago Police have received training to prevent future abuses from occurring.

68.     None of these reforms were instituted in time to save Mr. Scott from being abused.

69.     The ACLU report was not the first time the City of Chicago was put on notice that the police force required more training.

70.     The City of Chicago was on notice of systemic training deficiencies long before the ACLU broached the issue.

---

[8] *Id.*

[9] See Exhibit 8: NY Times Article on Chicago Stop-and-Frisk Reforms, Aug. 8, 2015.

71.    The City of Chicago has been on notice of its failure to properly train, supervise, and discipline the police force for years based on headlines like these:



CHICAGO DUNGEON: Homan Square interrogated African American suspects without due process

## Judge Orders Release of Racist Photo Featuring Two Cops Posing With a Black Man in Antlers

By Mark Joseph Stern



Chicago police officers posing for a racist photo.

Chicago Sun-Times

**72.**     Despite all these warnings, the City of Chicago failed to take steps to protect the constitutional rights of the citizens of Chicago and allowed the Chicago Police Department to utilize unconstitutional policies and tactics until very recently.

### *73.     The Unconstitutional Policies Are Being Reformed*

**74.**     Luckily for the citizens of Chicago, the City government has recently begun to take responsibility for the unconstitutional policies outlined above.

**75.**     Garry McCarthy, the superintendent of the Chicago Police Department, has been fired.[10]

**76.**     Mayor Rahm Emanuel has ordered an investigation into the Chicago Police Department and the IPRA.[11]

**77.**     Mayor Emanuel has even ordered an investigation into the City of Chicago Department of Law, based on the belief that City of Chicago lawyers were concealing evidence of police brutality.[12]

### THE INDIVIDUAL PARTIES

**78.**     On, before, and since April 29, 2014, the Plaintiff, Lawrence Scott, was a citizen of the United States of America, resided in Chicago,

---

[10] See Exhibit 9: NY Times article on McCarthy firing and CPD corruption.

[11] See Exhibit 10: WGN Article on IPRA Reforms.

[12] See Exhibit 11: Chicago Tribune Article on Chicago Law Department corruption.

Illinois, and enjoyed all rights and entitlements enumerated in the Constitution of the United States of America and all Amendments thereto. The Plaintiff is a black man, and as such, is a member of a class that has been historically discriminated against. He is entitled to protection from discrimination based on the Civil Rights Act of 1964.

79.     On and for some time before and after April 29, 2014, Defendant Robert Vahl, #7350, was a duly sworn peace officer of the City of Chicago, possessing law enforcement authority under Illinois law. At all relevant times set forth herein he was acting under color of law and within the scope of his employment with the City of Chicago.  Mr. Vahl is sued in his individual capacity. Upon information and belief, the Defendant resides in Cook County, Illinois.

80.     On and for some time before and after April 29, 2014, Defendant Steve Barsch, #18287, was a duly sworn peace officer of the City of Chicago, possessing law enforcement authority under Illinois law. At all relevant times set forth herein he was acting under color of law and within the scope of his employment with the City of Chicago.  Mr. Barsch is sued in his individual capacity. Upon information and belief, the Defendant resides in Cook County, Illinois.

81.     On and for some time before and after April 29, 2014, Defendant William Gentile, #1399, was a duly sworn peace officer of the City of Chicago, possessing law enforcement authority under Illinois law. At all relevant times set forth herein he was acting under color of law and within the scope of his employment with the City of Chicago.  Mr.

Gentile is sued in his individual capacity. Upon information and belief, the Defendant resides in Cook County, Illinois.

## COUNT I - 42 U.S.C. §§1983 AND 1985
### VIOLATION OF FOURTH AMENDMENT – EXCESSIVE FORCE (CONSPIRACY)

82.     Plaintiff incorporates by reference all other paragraphs in this complaint as though fully alleged herein.

83.     At all relevant times, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in his personal effects and property.

84.     At all relevant times, the Defendants, as well as other as-yet unknown co-conspirators, accomplished an unlawful result through individual and/or concerted action in that they agreed, through explicit or implicit means, to inflict bodily harm on the Plaintiff without any objectively reasonable justification to do so.

### 85.   *The Initial Stop Was an Illegal Assault*

86.     In furtherance of said agreement, the Defendants Barsch, Gentile, and Vahl, or other as-yet unknown co-conspirators, agreed to place Plaintiff in imminent fear of serious bodily injury by driving a car towards him at a high rate of speed without any objectively reasonable circumstance to do so.

87.     The Plaintiff was in fear based on the Defendants' illegal assault and reasonably turned and ran.

### 88. *Plaintiff's Head Wound was Caused by an Illegal Battery*

**89.**     In furtherance of said agreement, Defendant Vahl physically beat the Plaintiff, causing him severe injuries, without any objectively reasonable circumstance to do so.

### 90. *Police on the Scene Ignored the Assault/Battery*

**91.**     In furtherance of said agreement, the Defendants Barsch and Gentile, or other as-yet unknown co-conspirators, were aware of Defendant Vahl's beating of the Plaintiff, yet failed to intervene or report the actions of Defendant Vahl.

### 92. *Supervising Officers Ignored the Obvious Battery*

**93.**     When the Plaintiff arrived at the police station, his head wound was pouring blood. Any reasonable supervising officer would have conducted an investigation to document the possible police brutality. Instead, the officers at the police station participated in the cover-up.

**94.**     In furtherance of said agreement, Defendant Gentile, or other as-yet unknown co-conspirators, found probable cause for the Plaintiff's arrest, without any objectively reasonable circumstance to do so, and for the purpose of concealing the results of the conspiracy.

**95.**     The conduct of the Defendants was not objectively reasonable within the meaning of the Fourth Amendment to the Constitution of the United States, given the totality of the circumstances.

16

96.     Defendants' individual acts, failures to act, and/or conspiracy as described above violated Plaintiff's right to be free from unreasonable seizure as provided in the Fourth Amendment to the United States Constitution and has caused Plaintiff to suffer, and will in the future continue to suffer, severe damages including personal injuries, loss of reputation, mental anguish, emotional distress, and legal and medical expenses, as alleged herein.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory and punitive damages in a sum in excess of $2,000,000.00, and for his attorneys' fees and costs pursuant to 42 U.S.C. §1988.

## COUNT II - 42 U.S.C. §§1983 AND 1985
### VIOLATION OF FOURTH AMENDMENT – UNLAWFUL ARREST (CONSPIRACY)

97.     Plaintiff incorporates by reference all other paragraphs in this complaint as though fully alleged herein.

98.     The initial stop-and-frisk of Mr. Scott was unconstitutional, because the officers had no reasonable suspicion Mr. Scott was engaged in criminal activity.

99.     After the illegal stop-and-frisk, the police officer Defendants, and their supervisors, conspired to arrest Mr. Scott, and charge him with a crime he did not commit, in order to conceal the brutality committed by Officer Vahl during the illegal stop-and-frisk.

**100.** At all relevant times, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in his personal effects and property.

**101.** At all relevant times, the Defendants, as well as other as-yet unknown co-conspirators, accomplished an unlawful result through individual and/or concerted action, in that they agreed, through explicit or implicit means, to effect the unlawful detention and arrest of the Plaintiff, without lawful authority in the form of reasonable articulable suspicion, probable cause, a judicial warrant, or writ.

**102.** In furtherance of said agreement, the Defendants unlawfully detained, arrested, and falsely charged the Plaintiff, and manufactured and fabricated evidence against him, and withheld the existence and disclosure of exculpatory evidence.

**103.** At all times relevant hereto, the Defendants were acting under color of law, and their individual and/or concerted conduct as described herein above was done with deliberate indifference to the rights of the Plaintiff.

**104.** Defendants' individual acts and/or conspiracy as described above violated Plaintiff's right to be free from unreasonable searches and seizures as provided in the Fourth Amendment to the United States Constitution and has caused Plaintiff to suffer, and will in the future continue to suffer, severe damages including loss of reputation,

18

mental anguish, emotional distress, and legal expenses, as alleged herein.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory and punitive damages in a sum in excess of $2,000,000.00 and for his attorneys' fees and costs pursuant to 42 U.S.C. §1988.

### COUNT III - 42 U.S.C. §§1983 AND 1985
VIOLATION OF FOURTH AMENDMENT – MALICIOUS PROSECUTION
(CONSPIRACY)

**105.** Plaintiff incorporates by reference all other paragraphs in this complaint as though fully alleged herein.

**106.** At all relevant times, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the United States Constitution to be free from malicious and false prosecution of criminal proceedings based on an absence of probable cause.

**107.** At all relevant times, the Defendants lacked probable cause to detain, arrest and/or charge the Plaintiff with resisting arrest of assault on a police officer.

**108.** At all relevant times, the Defendants, as well as other as-yet unknown co-conspirators, accomplished an unlawful result through individual and/or concerted action, in that they agreed, through explicit or implicit means, to falsely and maliciously charge the Plaintiff with resisting arrest and assault on a police officer, without probable cause

to do so, which conduct resulted in the initiation of criminal proceedings against the Plaintiff.

**109.** As set forth above, and in furtherance of said agreement, the Defendants, and/or other as-yet unknown co-conspirators, made false statements, falsified police reports, filed false criminal charges initiating judicial proceedings, and/or withheld, concealed and/or destroyed exculpatory evidence and/or fabricated incriminating evidence.

**110.** The criminal charges filed by the Defendants were filed with malice, and constitute a violation of the Plaintiff's rights guaranteed under the Fourth Amendment to the Constitution of the United States.

**111.** As the proximate result of the constitutional violation as set forth above, the Plaintiff has suffered, and will in the future continue to suffer, severe damages including personal injuries, loss of reputation, mental anguish, emotional distress, and legal expenses, as alleged herein.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory and punitive damages in a sum in excess of $2,000,000.00, and for his attorneys' fees and costs pursuant to 42 U.S.C. §1988.

## COUNT IV[13] - 42 U.S.C. §§ 1983 AND 1985
### VIOLATION OF FOURTH AMENDMENT – FAILURE TO TIMELY PROVIDE MEDICAL CARE TO ARRESTEE (CONSPIRACY)

**112.**     Plaintiff incorporates by reference all other paragraphs in this complaint as though fully alleged herein.

**113.**     At all relevant times during his arrest, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the United States Constitution to the provision of timely medical attention where Plaintiff is suffering from a serious medical need.

**114.**     At all relevant times during his arrest, Plaintiff was profusely bleeding from his head and scalp, a serious medical injury requiring prompt medical care and attention.

**115.**     Despite Plaintiff's obvious need for medical treatment, Defendants failed to take action to provide said treatment to Plaintiff for approximately three (3) hours after his initial arrest.

**116.**     Defendants' failure to take action for approximately three (3) hours while Plaintiff bled profusely from his head was unreasonable.

**117.**     Plaintiff was harmed as a result of Defendants' failure to promptly obtain medical care for Plaintiff.

**118.**     As the proximate result of the constitutional violation as set forth above, the Plaintiff has suffered, and will in the future continue to

---

[13] PREVIOSLY COUNT VI (DKT. 85)

suffer, damages including personal injuries, loss of reputation, mental anguish, emotional distress, and legal expenses, as alleged herein.

**119.**    The failure to provide prompt medical attention to Plaintiff was done with malice, and constitutes a violation of the Plaintiff's rights guaranteed under the Fourth Amendment to the Constitution of the United States.

**120.**    At all times relevant hereto, the Defendants were acting under color of law, and their individual and/or concerted conduct as described hereinabove was done with deliberate indifference to the rights of the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory and punitive damages in a sum in excess of $2,000,000.00, and for his attorneys' fees and costs pursuant to 42 U.S.C. §1988.

## JURY DEMAND

Plaintiff hereby demands trial by jury for all issues and claims raised in this complaint.

Respectfully Submitted,

/s/    *Matthew Amarin*

Matthew Amarin
The Law Offices of Haytham Faraj PLLC
1935 W. Belmont Avenue
Chicago, IL 60657
Matthew@farajlaw.com
312-635-0800

## PROOF OF SERVICE

The foregoing Fifth Amended Complaint was served on all parties by filing the same through the ECF system of the U.S. District Court for the Northern District of Illinois, on August 11, 2020.

$$\underline{\hspace{2cm} \textit{/s/ Matthew Amarin} \hspace{1cm}}$$